IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


RICHARD S. DOSS, #921633,
      Plaintiff,

vs.                                                        Case No.:  5:08cv68/RS/EMT

SGT. LANGFORD, et al.,
      Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

      Plaintiff, an inmate at the Okaloosa Correctional Institution ("OCI") proceeding pro se, initiated this 42 U.S.C. § 1983 action by filing a complaint on March 9, 2008 (Doc. 1 at 9).  The court previously granted Plaintiff's motion to proceed in forma pauperis (*see* Docs. 2, 5).  The court granted the motion based only upon the monetary information supplied in the motion; however, based upon further review of the file and of previous cases filed by Plaintiff, the court vacates its order granting the motion.

      Plaintiff alleges the following facts in support of his claims.  On July 8, 2007, Plaintiff was incarcerated at the Bay County Jail ("BCJ"), which is operated by Corrections Corporation of America ("CCA"), and an altercation occurred between inmate Frank Coe and another unknown inmate (Doc. 1 at 10).  The altercation caused a "code blue" (*id.*).  Plaintiff was questioned about the incident by Office Dale, and Plaintiff responded to Officer Dale's questions by telling him that he did not know what the officer was talking about (*id.*).  Approximately one (1) hour later, Sgt. Langford opened Plaintiff's cell and "summoned him outside" (*id.*).  Sgt. Langford handcuffed Plaintiff while Officer Lane attempted to "double lock" the restraints (*id.*).  Plaintiff alleges that "[s]uddenly and without provocation Sgt. Langford stated: 'f___ this shit.  This is the way we do it at C.C.A.'" (*id.*).  Plaintiff further alleges that while Sgt. Langford was yelling and cursing, he

pulled Plaintiff's wrists up toward his shoulder blades, shoved him head first into closed elevator doors, and pulled him back and forth between the elevator doors and the elevator wall (*id.*).  Sgt. Langford and Officer Lane pulled on Plaintiff's handcuffs causing injuries to his wrists (*id.* at 11). Plaintiff  states, "[e]ach time [] [he] looks at his hand with the scar resulting from a laceration he is reminded of the assault and pain he endured" (*id.*).  Plaintiff also alleges his shoulders were injured as a result of Sgt. Langford's actions (*id.* at 13).

Plaintiff next alleges that he was escorted downstairs where he was left for "two to three hours with restraints in place" (*id.*).  He yelled for help because the handcuffs were tight and were cutting off his circulation (*id.*).  Chief McKenny came to his cell door, and Plaintiff informed him that "he had made a mistake by ordering Sgt. Langford and Officer Lane to [b]rutalize the Plaintiff for no reason" (*id.*).  Chief McKenny ignored Plaintiff by walking away and refusing to remove the handcuffs (*id.*).  Sgt. Smith also came to his cell door, and Plaintiff advised him that "there was no reason for the aforementioned assault, and restraints should be removed because they were painful and the Plaintiff could feel his shoulders having been [sic] severely damaged" (*id.*).  Plaintiff advised Sgt. Smith that he would sue him (*id.*).  Sgt. Smith told him that he would "fully investigate this matter" (*id.* at 12).  The constraints were finally removed, and Sgt. Langford issued a disciplinary report to Plaintiff (*id.*).  Plaintiff was found guilty of using profane language and sentenced to fifteen (15) days of disciplinary confinement (*id.* at 12).

Plaintiff also alleges that when Officer Lane applied restraints to transport Plaintiff and inmate Coe to the Annex, Plaintiff advised Officer Lane that "because he assaulted the Plaintiff or witnessed Sgt. Langford assault the Plaintiff for no reason and failed to stop the unjustified use of force, that he would be named as a defendant in a lawsuit because he was just as liable as Sgt. Langford for unjustly using force that resulted in severely injuring the Plaintiff" (*id.*).  Officer Lane advised Plaintiff that if he saw him "on the streets" he would shoot him (*id.*).  Plaintiff replied to Officer Lane's comment by stating, "no you wouldn't because you would be to [sic] scared to go to prison" (*id.* at 13).  After the Plaintiff and Officer Lane arrived at the Annex, Officer Lane got out of the vehicle to "secure his ammunition," walked by Plaintiff's side of the vehicle, and pointed a gun at Plaintiff (*id.*).

Plaintiff further contends that during the five (5) weeks he was housed at "CCA," he complained to the medical department of his neuropathy pain, and he suggested that they prescribe Neurontin because  he had previously taken this medication for pain (*id.*).  Dr. Tippman, however, refused to prescribe Neurontin because of "massive litigation," and instead recommended Motrin for the pain (*id.*).  Plaintiff told Dr. Tippman that he previously tried all of those types of pain medications and they were ineffective for the "burning, tingling, numbing, throbbing pain in his feet and hands" (*id.* at 15).  Dr. Tippman prescribed Neurontin after Plaintiff advised him that he would sue him for "deliberate indifference to his serious medical needs" (*id.*).  Plaintiff states that Dr. Tippman knew, based on his medical records, that Plaintiff fell sixty-five (65) feet from a beam onto a lower deck aboard a vessel in 1978 (*id.*).  Plaintiff also alleges, that although Dr. Tippman knew Plaintiff's pain had been treated with Neurontin since 1999 and knew of Plaintiff's prior injuries, he continued to deny Plaintiff relief for his pain (*id.*).

Plaintiff alleges that in October of 2007 (apparently after being transferred from CCA to the Florida Department of Corrections), he received an MRI of the left shoulder, which revealed that his left rotator cuff was torn, and Dr. Eschavia recommended surgery (*id.*).  Dr. Eschavia told Plaintiff that he may have a fifty percent chance of a successful recovery if he had the surgery (*id.*).  Moreover, while Plaintiff was being transported to the Department of Corrections, he rode with inmate Richard M. Tripp (inmate # 343768) who advised that although he was not an eyewitness to the incident, he heard Sgt. Langford state, "this is the way we do it at C.C.A." (*id.*).  Another inmate, Rudy Melarine, stated that he did not see the incident, but he heard through rumors from other inmates that Officer Lane was bragging about "running the Plaintiff into the elevator doors" (*id.* at 14).  Inmate Frank Coe also says that he heard Officer Lane bragging about pushing Plaintiff into the elevator doors (*id.*).  Plaintiff states that the above three (3) inmate witnesses agreed to sign affidavits and/or agreed to testify concerning what they witnessed (*id.*).

Plaintiff claims that Defendants inflicted physical injuries and denied him access to adequate medical care at BCJ, in violation of the Eighth Amendment (*id.* at 15).  As relief he seeks monetary damages in the amount of $200,000.00 from each Defendant (*id.* at 9).

The court takes judicial notice of <u>Doss v. Johnson, et al.</u>, Case No. 4:00cv148/LAC (N.D. Fla.), in which United States District Judge Lacey Collier adopted Magistrate Judge William C. Sherrill's second report and recommendation and revoked Plaintiff's in forma pauperis status (*see* <u>Doss v. Johnson, et al.</u>, Case No. 4:00cv148/LAC (N.D. Fla.), Docs. 39, 41).[1]  In his second report and recommendation, Judge Sherrill stated, "Plaintiff is an active and frequent litigator and will be required to provide information on his prior cases when he files subsequent cases in the future.  He must keep a listing of his prior cases and the true reason for dismissal." (*id.*, Doc. 39 at 6) (footnote omitted).[2]  Judge Sherrill also warned Plaintiff that he should be aware that having received three strikes, he may not now proceed as an in forma pauperis litigant in any federal court unless he is in imminent danger of serious physical injury (*see id.*, n.8).  Therefore, this court takes judicial notice that the court in <u>Doss v. Johnson, et al.</u> previously determined that Plaintiff has "three strikes."

Pursuant to the three strikes provision of the Prison Litigation Reform Act:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

In the instant case, Plaintiff was a prisoner when he commenced this action (*see* Doc. 1 at 2), he remains incarcerated (*see* Docs. 7, 8), and the instant civil rights action concerns the conditions of his confinement.  Moreover, the court in <u>Doss v. Johnson et al.</u> previously determined that Plaintiff has three strikes under § 1915(g).  Therefore, the issue before the court is whether Plaintiff qualifies under the "imminent danger of serious physical injury" exception and, therefore, is entitled to proceed in forma pauperis.

---

[1]According to the docket, the inmate number of the plaintiff in Case No. 4:08cv148/LAC is the same as Plaintiff's.

[2]Despite this warning by Judge Sherrill, Plaintiff again failed to provide an accurate list of his prior filings in the instant case (*see* Doc. 1 at 5 (Plaintiff's statement regarding his prior federal court filings that he "relies completely on memory - no documents available")).

Circuit court cases have been helpful in determining what a prisoner with three strikes must show in order to be allowed to proceed in forma pauperis.  According to the Eleventh Circuit, in Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004), "the issue is whether [the] complaint, as a whole, alleges imminent danger of serious physical injury."  Accordingly, when determining whether a plaintiff has met his burden of proving that he is in imminent danger of serious physical injury, the court must look to the complaint, which must be construed liberally and the allegations of which must be accepted as true.  *See id.*; Jackson v. Reese, 608 F.2d 159, 160 (5th Cir. 1979); McAlphin v. Toney, 281 F.3d 709, 710 (8th Cir. 2002).  General allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g).  Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003).  The plaintiff must allege and provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury," *id.*, and vague allegations of harm and unspecific references to injury are insufficient.  White v. State of Colorado, 157 F.3d 1226, 1231 (10th Cir. 1998).  A claim by a prisoner that he faced a past imminent danger is an insufficient basis to allow him to proceed in forma pauperis pursuant to the imminent danger exception.  Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding that exception not triggered where threat of assault by other prisoners ceased to exist when plaintiff was placed in administrative confinement prior to filing of his complaint); *see also* Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002) (holding that "imminent danger" exception to § 1915(g)'s "three strikes" rule is construed narrowly and available only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate.").  Moreover, "imminent danger" is assessed not at the time of the alleged incident, but rather at the time the complaint is filed.  *See* Abdul-Akbar v. McKelvie, 239 F.3d 307, 213 (3d Cir. 2001).

In the instant case, the court notes that at the time Plaintiff filed his complaint, he was no longer an inmate at BCJ but had been transferred to Okaloosa Correctional Institution (*see* Doc. 1 at 2).  Furthermore, his complaint concerns only the conditions at BCJ.  Because Plaintiff was no longer exposed to the conditions at BCJ at the time he initiated this action, and he does not allege that his current conditions of confinement pose an imminent threat of serious injury, he does not qualify under the imminent danger exception to § 1915(g).  Although Plaintiff alleges his rotator

cuff was injured and he still suffers from that injury, he does not allege that he is in excruciating pain or that he is in imminent danger of more severe injuries.   In fact, although Dr. Eschavia recommended surgery for the torn rotator cuff, he also told Plaintiff that there was only a "50-50" chance of success if he were to have surgery (Doc. 1 at 12).   To the extent Plaintiff asserts that without surgery the torn rotator cuff poses an imminent threat of serious injury, the court cannot agree, as this is not a genuine emergency.   If it were an emergency, Plaintiff would likely have requested medical relief instead of monetary relief (*see id.* at 9).   Additionally, Plaintiff indicated in the complaint that, although  Sgt. Langford and Officer Lane inflicted injuries to his hands and shoulder, he also had pre-existing injuries from a fall that occurred in 1978 (*id.* at 13).   Moreover, the Defendants named in the complaint, officers at CCA, would — under no set of facts — be liable for decisions related to the future care of Plaintiff's injury.   Thus, even if Plaintiff were permitted to proceed in forma pauperis in this action, and he ultimately prevailed on the merits, the relief he seeks would not remove any threat associated with the unrepaired rotator cuff.

Accordingly, Plaintiff's complaint fails to establish imminent danger of serious bodily injury, and therefore, he may not proceed in forma pauperis.   A prisoner who is no longer entitled to proceed in forma pauperis must pay the filing fee at the time he initiates the suit, and failure to do so warrants dismissal without prejudice.   Dupree v. Palmer, 284 F.3d 1234 (11th Cir. 2002); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir. 2001).

Because Plaintiff did not pay the $350.00 filing fee at the time he submitted this civil rights action, and because it plainly appears that Plaintiff is not entitled to proceed in forma pauperis, this court's order permitting him to proceed such shall be vacated, and this case should be dismissed. Leave should not be provided to allow him to pay the fee; rather, dismissal is required if a "three striker" does not pay the filing fee at the time he submits the complaint.   Dupree, 284 F.3d at 1234. Dismissal should be without prejudice to Plaintiff's initiating a new cause of action accompanied by payment of the $350.00 filing fee in its entirety.

Accordingly, it is **ORDERED**:

1.      The court's previous order (Doc. 5) granting Plaintiff's motion to proceed in forma pauperis (Doc. 2) is hereby **VACATED**.

2.      Plaintiff's motion to proceed in forma pauperis (Doc. 2) is **DENIED**.

3.      The clerk of court shall mail a copy of this order to:  Department of Corrections, 2601 Blairstone Road, Tallahassee, FL 32399-2500, Attention:  Agency Clerk.  The agency having custody of Plaintiff shall no longer forward payments from Plaintiff's account to the court for Case No. 5:08cv68/RS/EMT.

And it is respectfully **RECOMMENDED**:

That pursuant to 28 U.S.C. § 1915(g), this cause be **DISMISSED without prejudice** to Plaintiff's initiating a new cause of action accompanied by payment of the $350.00 filing fee in its entirety.

At Pensacola, Florida, this 21st day of August 2008.


                    /s/ *Elizabeth M. Timothy*
                    **ELIZABETH M. TIMOTHY**
                    **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**